And our third case this morning is Bradford Kennedy v. Kijakazi, Commissioner of Social Justice. Your Honors, counsel, may it please the court. The question is whether the error that this appeals counsel committed by declining to review the new and material evidence was harmless because there's no material, as the government argues, there's no material probability that it would have changed the result. But the evidence showed new impairments that hadn't been reviewed by the reviewers. And the government doesn't seriously argue that the appeals counsel was correct in the reason it gave for declining review, which was that the evidence, which came into being in March of 2019 after the ALJ decision of February 2019, didn't relate to the period in question, except that it was ordered in January 2019 on the basis of Is it your argument that expert medical evidence would have been needed to ascertain whether this March EMG and nerve conduction study related to Mr. Kennedy's condition during the period in question? So in other words, I could imagine an expert saying these things saying, in fact, if you get these results on an EMG, given the progression of disease or impairment, it inevitably had to have been there during the period of disability for which Mr. Kennedy was arguing. Exactly. The jurisprudence of this court is, how could anybody tell what that EMG meant who wasn't a medical doctor? And so far, all we have are lawyers talking about what it meant. That's the heart of the matter. Are there any other questions? I do have one other question, and that is, I'm trying to ascertain the degree to which you're functionally making a Chenery argument that when the appeals counsel says the reason for our action is because this isn't new evidence, it's just cumulative, they're stuck with that, and they can't say, oops, we made a mistake about that, but in fact, we're going to segue over to a harmless error point. I'm just asking, are you making a Chenery argument there? Yes. Yes. But you've made it far more eloquently than I have. It's not my case. It's your case. I'm just trying to get a sense of what you're saying. If a There are two avenues to allowance of the claim. One is if the doctor decided that Kennedy were limited to occasional use of the left hand, because the vocational expert testified that that precluded work at the light level, and if he's limited to sedentary work, he grids. The other way it leads to allowance of the claim is if a doctor decides it would have limited him to sedentary work, because, of course, then the medical vocation guidelines mandate allowance of the claim. I thought you were also arguing that the EMG and the nerve conduction study provided, I don't know whether it's the only objective evidence, testing-based evidence, aside from experientially-based evidence or not, but I thought you were drawing some distinction about the quality of the evidence. Well, it's the best in the sense that you can have an MRI. I've seen MRIs that you wonder how the person can do anything, and yet the person's walking around in front of you. The EMG measures the damage to the limb. It's not radiculopathic in nature, where the bone in the spine is... Radiculopathy, yeah. Yeah. Or it's a peripheral neuropathy in the limb. It's just raw EMG data, right? I don't have a doctor actually interpreting it as far as his functional capacity is concerned. Correct. And that's for a doctor. It's not for an ALJ, you're arguing, as I understand. Correct. Okay. And there were a couple of impairments, new impairments, unreviewed impairments that were uncovered by the EMG, carpal tunnel syndrome and a possible ulnar problem. So it ought to have gone back to reviewers. Thank you. Thank you. Mr. Jaynes. May it please the court. Good morning, Your Honors. Mr. Horne, ladies and gentlemen. Daniel Robert Jaynes on behalf of the Acting Commissioner. Your Honors, Kennedy claims that the March 2019 evidence submitted to the Appeals Council was a smoking gun so significant that it would have caused every doctor of record to change his or her opinion and caused the ALJ to change the outcome of her decision. I don't think that's his argument. I think his argument is that when the agency conducts its review, it's looking at a package of evidence. And by changing what's in the package, we don't know whether that would have changed the agency's mind, whether it wouldn't have appropriate level we're at. And the harmless error standard doesn't require us to say that this evidence is a game changer. It just has to say the agency never reviewed the right package of evidence. And so it's not for us to undertake that review. We're not the experts in this field. The agency is, but they didn't do it. Well, Your Honors, I would push back on that for a couple of reasons. The first is that this newly submitted evidence, including the March 2019 examination, had the same findings as examinations already before these doctors, already before the ALJ, and already before, within the time period at issue. But who read the EMG? Those were, I believe, two doctors read the EMG. I didn't think there was evidence in the record of any detail about, it did say the EMG showed some signs of mild carpal tunnel syndrome and whatever the ulnar problem was, I forget. But I think that, A, the fact that it was objective evidence, it wasn't something subject to a credibility challenge, for example. It was what it was. There were certain numbers, the electricity was moving down the nerve at a certain level, it was reaching the muscles in a certain way. So, at least as I understand it, Mr. Horn is saying that you needed expert testimony to assess the significance of this evidence in the light of all the rest of the evidence in the record. Well, Your Honors, that is not the standard of review before. The standard of review here is that the evidence that postdates the ALJ's decision and is submitted to the Appeals Council poses a reasonable probability that... Right, exactly. It doesn't say by a preponderance of the evidence. We see reasonable probability language a lot of times. And phrases such as, is this something that undermines our confidence in the outcome are the ones that are used, not, you know, is this now a slam decision should go the other way. That's not the standard. Correct, Your Honor. But this Court can rest assured that even under this reasonable probability standard, because we have the same examination findings, we have four or five strength. Well, four or five strength is throughout the record, throughout this finding... But strength isn't the same thing as fine motor coordination. Correct. But there were no findings in the new evidence about the fine motor coordination. But we have a finding of mild carpal tunnel syndrome. And we have a doctor that suspects at no point in the record has anyone been able to substantiate what Kennedy has been complaining about with his fingering. And so the vocational expert says, if it's reduced from frequent in the RFC down to something less, it's potential that this could have an effect on the RFC determination. Well, the latter point is true that if he was limited to only occasional handling and fingering, then there would be no jobs and he would be found disabled. The earlier points about mild carpal tunnel syndrome, Your Honor is correct, there is no diagnosis in the record before the Court of mild carpal tunnel syndrome. But there is the same evidence. There are allegations of hand complaints and there are measurements of his hand functioning, including many normal examination findings. He goes to a consultative examiner and has a... I think that's the rub here, is that the ALJ, it suggests that there is evidence that goes against what you're telling me, Mr. Kennedy, and there's evidence and it kind of goes, waffles back and forth depending on the medical provider that you're in front of. This is the first time, at least, in March after the decision has been made by the ALJ, where now Mr. Kennedy's allegations regarding fingering is now substantiated with the diagnosis. That's not entirely true, Your Honor, because there are... his allegations are substantiated through certain examinations and doctors are aware of his hand pain throughout the relevant period. Your Honor, it is correct that there was no EMG during the relevant period, so it's the first time an EMG has substantiated hand impairments. But the question again is, is this EMG, which shows mild, it's not moderate, it's not severe, it's mild findings, enough to turn everything around? And we submit that it is not, especially when you look, what was the treatment recommended? It was a wrist splint. Doctors during the relevant period advised a wrist splint. So doctors reviewing the EMG and reviewing his March 29th examination did not find this to be more serious. They did not recommend he undergo surgery, a carpal tunnel release, or some other procedure. Those doctors advised a wrist splint, which was advised throughout the relevant period here in this case. And this certainly is not going to be enough to offset the many normal examinations throughout the record, including that very five-of-five hand strength, and he has no abnormalities whatsoever in his right hand. And if that's not enough, you can go to the medical opinions, of which there are three. Two doctors reviewed the evidence, including the four-of-five hand strength, and found no manipulative limitation. Kennedy's own treating doctor reviewed the evidence. She was aware of his longstanding complaints about his hands, but she consistently made normal findings, full strength, no documented hand difficulties. Any functional limitations? Pardon me? Did she find any functional limitations? Yes. She found frequent handling and fingering. Frequent? Yes. And that's where the ALJ derived. The ALJ gave Mr. Kennedy the benefit of the doubt, adopted the most restrictive opinion that she could of record, which was that of Kennedy's treating doctor, which found frequent handling and fingering. That's in the RFC. They ran that past the vocational expert, and the vocational expert testified that there were three jobs in significant numbers that Kennedy could perform, which is why we found Kennedy was not disabled here. This is the kind of case where, even at the hearing, they wanted to present more evidence. They had an appointment after the ALJ. The hearing was in November 2018. The ALJ permitted, so evidence was entered in December of 2018, and it showed a wrist splint, and it showed So similar to what was in the record already. So is it your view, then, that the Appeals Council never needs to mention harmless error? It certainly didn't say that. It thought that this new evidence was simply irrelevant because it pertained to his capacity after the period of eligibility closed, and this entire edifice of the government's argument is built on harmless error, and these standards that you're talking about never mentioned by the Appeals Council. Well, Your Honor, the Appeals Council would not mention harmless error in its order because there was no error. This evidence was not before the ALJ. This came after the ALJ's hearing. But you're saying, even if it, they didn't say what you're saying. They didn't say, we've looked at this evidence, and even if it did pertain to the period in question, it wouldn't move the needle, you know, it wouldn't change things. That's missing from the Appeals Council's statement. Correct, Your Honor. The Appeals Council says that the evidence does not relate back to the period. Right, I saw, yeah. And so the Appeals Council, what their job is, they are simply reviewing, and they're looking to see whether the ALJ followed the policy and followed the regulations. I understand that, but if they had found that this evidence related to the proper period, it's at least conceivable they might have sent it back to the ALJ to do a reassessment in light of a fuller record. They have that power. That's one of the things you're asking them to do. Correct. What we believe here is that the... And you're guessing that they wouldn't have done that, but they don't tell you whether they would have done it or not. Well, we think any review of the Appeals Council's order was done correctly the way the District Court did it here. The District Court said, okay, here was the Appeals Council's stated reason, and here is the standard. A reasonable probability that this evidence would have changed the outcome. But the Appeals Council never addresses that. I agree the District Court did. And you may be right. I don't know. Because I don't know, it's a little unsettling. You're correct, Your Honor, but the big picture we're looking at, if this case was to send back on this issue here, what would be the result and what is the utility of remand here? And here we have, it's the same evidence. It's the same, it's actually lesser allegations because in this March 2019 evidence, Kennedy does not mention that he has hand pain in his allegations. And it's the same treatment with the wrist splint. So we're talking same evidence, same allegations. This is everything that's been reviewed by doctors and the ALJ. And I see that my time is up. May I have a brief moment? Just to clarify before you conclude. Yes. So you're not defending the Appeals Council's stated reason for rejecting this evidence? Well, we are in the sense that we... Except by virtue of harmless error. Correct. You're agreeing that this new evidence related to the period in question. Well, we do read the Appeals Council that evidence does not relate back, could be interpreted to mean that it does not pose that reasonable probability. But we understand it's a short sentence and that a harmless error argument is likely what would save the Appeals Council's order. Okay. Thank you. Thank you. And we ask that you affirm the decision of the ALJ. Thank you. All right. Thank you. Mr. Horne, anything else? Thank you. Does the court have any questions? Apparently not. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.